No. 12685

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

CLAYTON R. FISCUS,

Plaintiff and Respondent,

-vs-

BEARTOOTH ELECTRIC,

Defendant and Appellant.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Appellant:

Hutton, Sheehy and Cromley, Billings, Montana
John C. Sheehy argued, Billings, Montana

For Respondent:

Berger, Anderson, Sinclair and Murphy, Billings, Montana
Richard W. Anderson argued, Billings, Montana

For Amicus Curiae:

Gene Huntley argued, Baker, Montana
Bruce R. Toole argued, Billings, Montana

---

Submitted: February 27, 1974

Decided: MAY 7 1974

Filed: MAY 7 1974

*Thomas J. Kearney*
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This matter comes on an application to accept jurisdiction of an appeal from a summary judgment in favor of plaintiff on an issue of law as to immunity to a common law tort action of the defendant. No issue is made of procedural matters, and we treat this as an appeal.

The defendant in this case is Beartooth Electric Co-operative, Inc., headquartered at Red Lodge, Montana. Its business is supplying electricity in rural areas in Carbon, Stillwater, and Sweet Grass Counties, and in part in Park County, Wyoming. It is a Montana corporation, incorporated in 1938. It has electric transmission systems, including the usual poles and transmission wire over which electricity is conducted to its customers.

Plaintiff is Clayton R. Fiscus, a resident of Billings, Montana, who was on the date of this accident 34 years old. He is employed as a journeyman lineman for High Voltage Systems, Inc., an electrical contractor.

Shortly before the accident here involved, High Voltage Systems, Inc., had entered into a bid contract with Beartooth whereby High Voltage Systems, Inc., would convert five miles of single phase line on the Beartooth system to three phase number 2 ACSI wire, and a number 4 neutral.

There is no dispute between the parties that in performing the contract for Beartooth, High Voltage Systems, Inc., was an independent contractor.

Plaintiff Fiscus, as an employee of High Voltage Systems,

Inc., on May 27, 1971, while on a power pole in the Beartooth system, came in contact with the electric power, in such manner that he sustained injuries from which he lost one arm above the elbow and one leg below the knee.

High Voltage Systems, Inc., had provided workmen's compensation coverage to cover its employees in connection with its work. Plaintiff Fiscus has been compensated, and is now being compensated for his medical expenses, and for compensation benefits, by the workmen's compensation carrier for his employer, High Voltage Systems, Inc., as a result of the accident.

In the action now pending in the district court plaintiff has sued Beartooth for his personal injuries, alleging that Beartooth negligently failed to provide plaintiff with a safe place to work, and with safe working appliances.

Beartooth did not specifically require, verbally or in writing, that High Voltage Systems, Inc. provide workmen's compensation coverage for its employees. However, the statutes do so require and provide a criminal penalty for failure to do so, section 92-207, R.C.M. 1947, and, as noted above, High Voltage did cover plaintiff.

This proceeding involves a step-out from the holdings of this Court in Ashcraft v. Montana Power, 156 Mont. 368, 480 P.2d 812 and Buerkle v. Montana Power Co., 157 Mont. 57, 482 P.2d 564, with respect to the legal liability of an owner to the injured employee of an
/independent contractor. The injury occurred on May 27, 1971; thus the applicable statutes are those that applied at the time of the decisions in Ashcraft and Buerkle.

- 3 -

The issue here is whether immunity to common law liability recognized in Ashcraft and Buerkle extend to an owner where the contractor in fact provided workmen's compensation coverage, but the owner did not require it in the contract.

In Buerkle the plaintiff disputed the Ashcraft rule and claimed that because the negligence of the general employer, Montana Power Company, was at least a concurrent cause of the injuries to the plaintiff, the defendant power company was not immune from common law liability even under the Ashcraft rule.

This Court held that Buerkle was ruled by the rule in Ashcraft and explained its rationale in Buerkle at p. 59:

> "Bearing in mind the reasoning above, the self-evident result in Ashcraft was that a general employer under such circumstances is immune from third party liability suits. The same conclusion would mechanically follow in the present case except plaintiff charges section 92-438, R.C.M. 1947, should be limited in effect to the Workmen's Compensation Act and should not be a bar to third party liability suits grounded on the common law. This Court does not agree with this reasoning.
>
> "To understand the scope of section 92-438, R.C.M. 1947, it must be read in conjunction with sections 92-604 and 92-204, R.C.M. 1947. Section 92-604, R.C.M. 1947 provides:
>
> "'Where any employer procures any work to be done, wholly or in part for him, by a contractor other than an independent contractor, and the work so procured to be done is a part or process in the trade or business of such employer, then such employer shall be liable to pay all compensation under this act to the same extent as if the work were done without the intervention of such contractor. And the work so procured to be done shall not be construed to be "casual employment."'
>
> "The effect of this statute makes a general contractor liable for injuries sustained by employees of another contractor where the work project is a part or process in the trade or business of the general contractor.

For example, if a general contractor hired another as a subcontractor, the general contractor would control and supervise the details and means of carrying out the work, and an employee of the subcontractor was injured, the general contractor would be liable for the employee's injuries if the project was a part of the business of the general contractor.

"But how extensive would the general contractor's liability be? Section 92-204, R.C.M. 1947, provides this answer:

"'Where both the employer and employee have elected to come under this act, the provisions of this act shall be exclusive, and such election shall be held to be a surrender by such employer and the servants, and employees of such employer and of such employee, as among themselves, of their right to any other method, form or kind of compensation, or determination thereof, or to any other compensation, or kind of determination thereof, or cause of action, action at law, suit in equity, or statutory or common law right or remedy, or proceeding whatever, for or on account of any personal injury to or death of such employee * * *.'

"This portion of section 92-204 limits the general contractor's liability exclusively to compensation provided by the Workmen's Compensation Act.

"How is this relative to section 92-438, R.C.M. 1947? The previously quoted portion of section 92-438 prevents a general contractor from using the defense of 'independent contractor' where he does not require an employee's immediate employer to carry workmen's compensation insurance. Therefore, if the general contractor can not use the 'independent contractor' defense then he falls within the scope of section 92-604, which as previously described makes him exclusively liable for compensation under the Workmen's Compensation Act in accordance with section 92-204. Therefore, if section 92-438 in conjunction with sections 92-604 and 92-204 limit the liability of a general contractor exclusively to compensation under the Workmen's Compensation Act in circumstances just described, is it reasonable under the same statutes to assume that where a general contractor requires the employee's immediate contractor to carry workmen's compensation insurance, the general contractor is not immune from a common law liability suit as a third party? This Court does not believe so.

"A contrary result would be abusive of the central theory behind the Workmen's Compensation Act. In Yurkovich v. Indus. Acc. Bd., 132 Mont. 77, 83, 84, 314 P.2d 866, in

- 5 -

reference to the Workmen's Compensation Act, we said:

"'This act is fundamental legislation enacted first for the protection and benefit of the injured workman, his wife and children, and other dependents. By force of the law the employee surrenders his right of an action in tort for injury or death. The act however assures him and his dependents of the protection of certain benefits in case of injury or death.

"'Secondly, the act fixes a limited liability of the employer so that the economic loss caused by such accidents shall not rest upon the employee or the public, but that the industry in which the accident occurs shall pay in the first instance for the loss occasioned by such accident.

"'In construing a statute the whole act must be read together, and where there are several provisions or particulars such a construction is, if possible, to be adopted as will give effect to all.'

"The system of compensation under the Workmen's Compensation Act does not envision benefits drawn from a single employer by a common law tort action together with liability from workmen's compensation insurance." (Emphasis supplied.)

What makes the instant case appear different from <u>Ashcraft</u> and <u>Buerkle</u> is the language in section 92-438, R.C.M. 1947, reading in part "<u>except</u> when such defense is interposed on behalf of <u>a party who has previously required</u> the claimant's immediate employer to come within the workmen's compensation act." (Emphasis supplied.) The meaning of the words "a party who has previously required" is argued by the respondent to mean a party who has previously required by contract rather than a party who has relied on the law with criminal sanctions to require compensation insurance. The argument goes that the words "previously required" must have some meaning in the statute and that the mere <u>fact</u> of coverage pursuant to law is not sufficient. Was not this compliance with previously required coverage?

- 6 -

Under Buerkle above, we said that where a general employer had not required his independent contractor to provide workmen's compensation, the general employer would be liable for workmen's compensation under section 92-204, R.C.M. 1947. It is a contingent liability. If the independent contractor did not in fact cover the employee, even though required both by contract and by law to have done so; then, in that event the general employer or owner is liable for compensation. This contingent liability, actually a real liability in the sense that it is reflected in the cost of doing business in any event, is what entitles the general employer to the protection of immunity. The workman is guaranteed protection. This is what "statutory employer" is all about.

In the instant case, because Beartooth did not require High Voltage Systems to provide coverage, Beartooth became liable to Fiscus for coverage if High Voltage Systems had failed for any reason to have done so. In other words the general employer is responsible in the first instance for nonfault liability even though he may pass it on to a subcontractor. The general employer is under a continuing potential liability; he has thus assumed a burden in exchange for which he is entitled to immunity from a damage suit resulting from the same accident with or without fault. (See Volume 2, Larson, Workmen's Compensation Law, Section 72.31(Cum. Supp.))

The grant of immunity to an owner or general employer who has not required his independent contractors to comply with the Workmen's Compensation Act does not represent a departure

from our prior holdings. In Ashcraft the question was whether or not a general employer who had complied with section 92-438 and required compliance with the Workmen's Compensation Act by his independent contractors could be sued as a third party by the contractor's employees. We held that he could not. Following Ashcraft the question was again presented in Buerkle. In deciding that case we elaborated our reasoning as heretofore pointed out. Subsequently the question was again presented albeit in slight different form in First National Bank and Trust Company v. District Court, 161 Mont. 127, 505 P.2d 408, 412. The reasoning of Buerkle was reiterated in that decision. In the **First National Bank** we observed that an owner or general employer would be immune to a third party suit on either of two bases:

> "* * * First, in the absence of workmen's compensation coverage by either Allen or American, (the independent contractors) clearly under the statute the Bank would not be entitled to the independent contractor defense, and would thus be deemed plaintiff's 'statutory employer'. Second, the Bank complied with the intent of the statute that all persons working on the construction would be covered by workmen's compensation."

In all our previous cases the element of required compliance with the Workmen's Compensation Act on the part of the independent contractor has been present. In each of those cases we held the owner immune from suit as a third party. In each of those cases we granted the immunity because of the fundamental unfairness of subjecting an employer to third party liability which he could have avoided as a statutory employer had he not required his independent contractor comply with the Workmen's

Compensation Act. In this case we face the situation in which the owner or general employer did not require compliance with the Workmen's Compensation Act and is accordingly subject to potential no-fault liability for benefits under the Workmen's Compensation Act as the statutory employer of the injured workman. Since the owner Beartooth is subject to such liability it necessarily follows that it is also immune to suit as a third party under section 92-204, R.C.M. 1947, which makes the remedies of the Workmen's Compensation Act exclusive between employer and employee.

Also appearing in this action as amicus curiae were Shell Oil Company and James B. Hatfield, the parties litigant in a cause currently pending in federal district court which involves the same legal question herein decided.

The order of the district court denying summary judgment is vacated and the district court is directed to grant summary judgment to Beartooth Electric Co-operative.

_Wesley Castles_
Justice

We concur:

_____
Chief Justice

_John Conway Harrison_

_____
Justices

Mr. Justice Gene B. Daly dissenting:

I dissent.

This case turns on the interpretation of section 92-438, R.C.M. 1947, as amended by Section 1, Chapter 49 of the Laws of 1965, and since repealed by Section 2, Chapter 251, Laws of 1973. Therefore any in depth discussion on points of disagreement would be by any view academic and of little value to the bar of Montana.

I would only point out that the language contained in the 1965 amendment was not clear or as direct as it might have been to aid in the search for legislative intent. My views in the original treatment contained in Ashcraft v. Montana Power, 156 Mont. 368, 480 P.2d 812, recognized the power of the legislature to grant immunity from common law liability in return for vicarious statutory liability but the legislative intent must be manifest and of course contained within the Workmen's Compensation as restated in Kelleher v. Montana Aeronautics, 160 Mont. 365, 503 P.2d 29. The majority in Ashcraft found the intent to limit third party actions but restricted the application to a narrow application within the terms of the 1965 amendment. We have followed this interpretation since that time.

It is my view that the majority here makes a departure from the narrow application of Ashcraft when it considers the mandate of a criminal statute to satisfy the requirements of the Act placed on the employer, Beartooth Electric, if they wish to avoid their responsibility to the employees of the independent contractor to respond to a third party action.

_____
Justice

I concur in the foregoing dissent of Mr. Justice Gene B. Daly.

_____
Justice

- 10 -